UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LONNIE TWO EAGLE, SR.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | 5:20-CV-05054-JLV<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff, Lonnie Two Eagle, Sr., filed a three-count complaint against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(B), 2401(B), 2671-80, 2672.  See Docket No. 1.  The government moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction.  See Docket No. 17.  Mr. Two Eagle opposes the motion (Docket No. 28), and the government has replied (Docket No. 39).  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, United States District Judge.  Docket No. 38.

## FACTS

In August 2019, Chad Sully was employed as a cook in the Dietary Department of the Rosebud Comprehensive Healthcare Facility ("RCHCF") in

the Rosebud Indian Reservation.  Mr. Sully's responsibilities included planning, preparing, and coordinating meals.  Operating a motor vehicle was not part of his normal job responsibilities.

On August 5, 2019, Mr. Sully was scheduled to work a double shift.  He started his workday at 6:00 a.m. and took his lunch break at around 1:00 p.m. He drove home to rest, then stopped at the post office to check his personal mail on his way back to the hospital.  At around 1:40 p.m., while driving on Hospital Drive near the RCHCF, Mr. Sully suffered a seizure and lost control of his vehicle.  Mr. Two Eagle was operating a riding lawn mower on property owned by the Rosebud Sioux Tribe along Hospital Drive, which leads to and encircles the RCHCF.  Mr. Sully's vehicle struck the riding mower and Mr. Two Eagle kept driving, ultimately coming to a stop when the mower became lodged under its chassis.

After the collision, Mr. Two Eagle was transported to the nearby RCHCF, then flown to Rapid City, South Dakota, for further treatment.  He suffered head, spinal, and leg injuries, and his right lower leg was amputated.  Due to his injuries, Mr. Two Eagle requires kidney dialysis three times per week.  His head injury has caused permanent loss of cognitive abilities.

Mr. Sully had a history of seizures beginning in 2019; he suffered seizures in January 2019, March 2019, and April 2019.  He was treated at the RCHCF and flown to Sioux Falls, South Dakota, for treatment after the January 2019 seizure.  Mr. Sully had been instructed by his physicians not to drive until he was seizure-free for six months, but, on July 23, 2019, he was

2

authorized by his telemedicine neurologist, Dr. Matthew Smith, to start driving in August 2019.

Mr. Two Eagle filed an administrative claim under the FTCA in December 2019.  In January 2020, the government responded with a written letter requesting further information.  In July 2020, the Department of Health and Human Services ("DHHS") mailed a written denial of the claim.  Mr. Two Eagle initiated this lawsuit on August 31, 2020.  Therefore, Mr. Two Eagle's FTCA claims are timely.  See 28 U.S.C. § 2401(b) (plaintiff must file suit in federal court within six months of administrative denial).

## DISCUSSION

**A.     Standards Applicable to the Government's Motion to Dismiss**

The government has moved to dismiss Mr. Two Eagle's complaint for lack of subject-matter jurisdiction under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) authorizes dismissal for lack of subject-matter jurisdiction.  On a motion to dismiss under Rule 12(b)(1), the standard of review depends on whether the defendant is making a facial attack or factual attack on subject-matter jurisdiction.  Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007).  Where, as here, the defendant attacks the factual basis for subject-matter jurisdiction, the court can consider matters outside the pleadings, "and the non-moving party does not have the benefit of 12(b)(6) safeguards."  Osborn v. United States, 918 F.2d 724, 729-30 n.6. (8th Cir. 1990) (citations omitted).  "A factual attack occurs when the defendant

3

challenges the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (cleaned up and citation omitted).  In that case, "no presumptive truthfulness attaches to the plaintiff's allegations," and a "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Osborn, 918 F.2d at 730 (quotation omitted).  The plaintiff bears the burden of proving jurisdiction exists.  Id.

Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).  A Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss under Rule 12(b)(1).  Gates v. Black Hills Health Care Sys., 997 F. Supp. 2d 1024, 1029 (D.S.D. 2014) (citing Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992)).  The plaintiff has the burden of proving jurisdiction exists.  VS Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted).  A district court has the authority to dismiss an action for lack of subject-matter jurisdiction on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

**B.     The Federal Tort Claims Act**

"The United States is immune from suit unless it consents.  Congress waived the sovereign immunity of the United States by enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment.  The United States is, nevertheless, immune if an exception applies." Hart v. United States, 630 F.3d 1085, 1088 (8th Cir. 2011).  If an exception applies, "the bar of sovereign immunity remains." Dolan v. U.S. Postal Serv., 546 U.S. 481, 485 (2006).  "Where the United States has not waived sovereign immunity under the FTCA, the district court lacks subject matter jurisdiction to hear the case." Hart, 630 F.3d at 1088.

"The FTCA confers subject matter jurisdiction for suits against the United States in 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' " Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018) (quoting FDIC v. Meyer, 510 U.S. 471, 477 (1994)); see 28 U.S.C. § 1346(b)(1). The "law of the place" generally means the law of the state where the alleged act or omission occurred. Meyer, 510 U.S. at 478. "[W]here an act or omission occurs within the territorial boundaries of both a tribal reservation and a State, 'the law of the place' for purposes of the FTCA is the law of the State." LaFromboise v. Leavitt, 439 F.3d 792, 796 (8th Cir. 2006). Thus, although the alleged acts or omissions occurred within the boundaries of the Rosebud Indian Reservation, South Dakota is the source of substantive law in this case.

5

**C.     Mr. Two Eagle's Claims**

Mr. Two Eagle's complaint alleges three claims for relief.  First, Mr. Two Eagle has raised a negligence claim against the federal government under a theory of vicarious liability, alleging Mr. Sully was acting within the scope of his employment when his vehicle collided with Mr. Two Eagle.  Count II alleges negligent hiring, training, supervision, screening, and retention against the federal government for its alleged negligence in failing to take steps to prevent Mr. Sully from driving for work purposes within six months of his last seizure. In count III, Mr. Two Eagle alleges medical negligence against the United States for Dr. Smith's authorizing Mr. Sully to drive.

**1.     Whether Mr. Sully Was Acting Within the Scope of His Employment**

In his first count, Mr. Two Eagle alleges Mr. Sully negligently operated a motor vehicle while acting within the scope of his employment.  If Mr. Sully was acting within the scope of his employment at the time of the collision, the FTCA would operate to waive sovereign immunity, and the federal government might be liable for personal injuries to Mr. Two Eagle.  If, on the other hand, Mr. Sully was not acting within the scope of his employment when his vehicle struck the riding mower, there is no waiver of sovereign immunity, and the court lacks subject-matter jurisdiction.  "A threshold requirement to establish jurisdiction under the FTCA is that the federal employee must have been acting within the scope of his employment when the tort was committed."  Johnson v. United States, 534 F.3d 958, 963 (8th Cir. 2008) (citing Primeaux v. United States,

181 F.3d 876, 878 (8th Cir. 1999) ("In determining the extent of the government's FTCA liability, 'scope of employment' sets the line.")).

But Mr. Two Eagle argues the court should not entertain the government's motion to dismiss for lack of subject-matter jurisdiction because doing so would require a determination intertwined with or identical to a determination of the merits of the case.  In support of this argument, Mr. Two Eagle primarily relies upon Godwin ex rel. Godwin v. United States, No. 3:14CV391-DPJ-FKB, 2015 WL 4644711, at *2 (S.D. Miss. Aug. 4, 2015), and Montez v. Dep't of Navy, 392 F.3d 147, 150 (5th Cir. 2004).  In Godwin, the Southern District of Mississippi denied a Rule 12(b)(1) motion to dismiss a tort claim raised under the FTCA because "[i]n the Federal Tort Claims Act context, dismissal for lack of subject-matter jurisdiction based on a finding that the tortfeasor was not acting within the scope of her employment at the time of the incident would be improper."  2015 WL 4644711, at *2 (citing Montez, 392 F.3d at 150).  " 'Instead, the 'jurisdictional attack intertwined with the merits of [the] FTCA claim should be treated like any other intertwined attack' and considered under Rule 12(b)(6) or Rule 56."  Id. (quoting Montez, 392 F.3d at 150).

The Fifth Circuit in Montez reversed the district court's granting of a Rule 12(b)(1) motion to dismiss a FTCA claim on scope-of-employment grounds because, "where issues of fact are central both to subject matter jurisdiction and the claim on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits."  392 F.3d at 150.  See also Lawrence v. Dunbar, 919 F.2d 1525, 1529-30 (11th Cir. 1990) (holding FTCA claims may

not be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) based upon the district court's resolution of the disputed factual question whether an employee of the U.S. government was acting within the scope of their employment); Kerns v. United States, 585 F.3d 187, 195-96 (4th Cir. 2009).

But there is a split of authority among the circuit courts of appeals on this issue, and the United States Supreme Court has not resolved it.  The Eighth Circuit has rejected this approach in FTCA cases, and courts in this district have continued deciding Rule 12(b)(1) motions alleging lack of subject-matter jurisdiction in FTCA cases where whether a federal employee was acting within the scope of their employment at the time of injury is at issue.  See Johnson v. United States, 534 F.3d 958, 963-64 (8th Cir. 2008); Patterson v. United States, No. CIV 16-3041, 2018 WL 388916, at *3 (D.S.D. Jan. 11, 2018); Lightning Fire v. United States, No. 3:15-CV-03015-RAL, 2017 WL 1944105, at *3 (D.S.D. May 9, 2017).  See also CNA v. United States, 535 F.3d 132, 140 (3d Cir. 2008) (affirming granting of motion to dismiss for lack of subject-matter jurisdiction; finding issue whether a government employee was acting within scope of employment at time of conduct underlying FTCA claim was jurisdictional); Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007) (the scope-of-employment issue in FTCA cases is best resolved under Rule 12(b)(1)).

In Johnson, the Eighth Circuit rejected the very argument Mr. Two Eagle now makes:

> Johnson argues because the jurisdictional question is "intertwined" with the merits of his lawsuit, the district court could not determine this issue on a 12(b)(1) motion. While Johnson is correct that generally, whether an employee's actions are within the scope of their employment is a question of fact, we fail to see how the factual nature of this inquiry somehow renders the jurisdictional issue "so bound up with the merits that a full trial on the merits" is necessary to resolve the issue. Crawford v. United States, 796 F.2d 924, 929 (7th Cir. 1986). Indeed, the issue whether Little Light's conduct was within the scope of his employment is unrelated to whether Little Light's conduct was negligent, which is the most important issue on the merits.

534 F.3d at 963-64. The Eighth Circuit went on to affirm the district court's granting the government's Rule 12(b)(1) motion to dismiss on the basis that Little Light, a federal employee, was not acting within the scope of his employment at the time of the alleged injury and the court therefore lacked subject-matter jurisdiction in the case. Id. at 964.

Accordingly, the district court can determine whether, as a factual matter, Mr. Sully was acting within the scope of his employment at the time of the collision and resolve the government's Rule 12(b)(1) motion. The issue whether Mr. Sully was acting within the scope of his employment is unrelated to whether his conduct was negligent, which is the most important issue on the merits.

### a.    The Going-and-Coming Rule

Scope of employment questions are governed by the law of the state where the alleged tortious acts took place, see St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001) (citing Brown v. Armstrong, 949 F.2d 1007, 1012 n.7 (8th Cir. 1991)), which is South Dakota in this case. "However, FTCA claims are strictly limited to a scope of employment analysis, regardless of state

9

law doctrines of respondeat superior and apparent authority." <u>St. John</u>, 240 F.3d at 676 (citing <u>Primeaux</u>, 181 F.3d at 878).

"When confronted with deciding whether an agent's negligent act falls within the scope of his or her employment, [South Dakota courts] apply a two-prong test: (1) 'whether the purpose of the act was to serve the principal' and (2) 'whether the act was foreseeable.' " <u>Tammen v. Tronvold</u>, 965 N.W.2d 161, 169 (S.D. 2021) (quoting <u>Bernie v. Catholic Diocese of Sioux Falls</u>, 821 N.W.2d 232, 237 (S.D. 2012)). For an act to be foreseeable, the "employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." <u>Kirlin v. Halverson</u>, 758 N.W.2d 436, 443 (2008) (quoting <u>Leafgreen v. Am. Family Mut. Ins. Co.</u>, 393 N.W.2d 275, 280-81 (S.D. 1986)).

However, the court must first determine whether Mr. Sully's actions fall within the going-and-coming rule. The going-and-coming rule "precludes an employer's liability, as a matter of law, when an employee is 'going to and coming from work . . . .' " <u>Tammen</u>, 965 N.W.2d at 169 (quoting <u>S.D. Pub. Entity Pool for Liab. v. Winger</u>, 566 N.W.2d 125, 131 (S.D. 1997)). "[T]he going and coming rule 'ha[s] its genesis in workers' compensation law and has been imported into tort law.' " <u>Tammen</u>, 965 N.W.2d at 169 (quoting <u>Carter v. Reynolds</u>, 815 A.2d 460, 466 (N.J. 2003)). "[T]he public policy underpinnings justifying the rule are clear: it is inherently unfair to penalize an employer by imposing unlimited liability . . . for the conduct of its employees over which it has no control and from which it derives no benefit." <u>Tammen</u>, 965 N.W.2d at

169 (citing <u>Newman v. White Water Whirlpool</u>, 197 P.3d 654, 657 (Utah 2008) (citation omitted)).  "This is because, 'when employees travel to or from work[,] they are deemed to be acting in their own interests without constraints by the employer regarding the method or means of the commute.' " <u>Tammen</u>, 965 N.W.2d at 170 (quoting <u>Carter</u>, 815 A.2d at 467).  The South Dakota Supreme Court has identified two main questions relevant to whether the going and coming rule applies:  "(1) whether the employer had control over the employee's commute, and (2) whether the employer derives a benefit from the employee's commute." <u>Tammen</u>, 965 N.W.2d at 170 (citations omitted).

Here, Mr. Sully's commute to the hospital after his lunch break falls squarely within the going-and-coming rule because the RCHCF neither had sufficient control over nor received a sufficient benefit from his commute.  The South Dakota Supreme Court's recent decision in <u>Tammen</u> is instructive.  In <u>Tammen</u>, plaintiffs brought a tort action to recover damages from injuries sustained in a motor vehicle collision with a member of the Pierre, South Dakota, volunteer fire department.  <u>Tammen</u>, 965 N.W.2d at 164-65.  At the time of the accident, the volunteer firefighter was driving his personal vehicle to a monthly fire department training meeting.  <u>Id.</u> at 165.  The fire department required members to use their own vehicles to respond to fire calls.  <u>Id.</u> at 166.  The South Dakota Supreme Court concluded the firefighter's actions fell within the going and coming rule, which precluded the city's liability as a matter of law.  <u>Id.</u> at 171.

As the <u>Tammen</u> decision makes clear, merely traveling to work is, without more, not an employer-derived benefit that takes the circumstances out of the going-and-coming rule.  <u>Id.</u> at 171 (holding "the benefits . . . received from Tronvold's commute to the training are no different than the regular benefits an employer receives from an employee showing up for work" and "[w]ere we to conclude that Tronvold's drive to the training meeting was within the scope of his employment, under these specific facts, then the going and coming rule would have no effect").  The court reasoned, "[n]either the City nor the [fire department] exercised control over his commute by providing him a vehicle, reimbursing him for his commute to the fire station, or directing the means by which he arrived at the meeting."  <u>Id.</u>  "At the time of the accident, Tronvold was not responding to an emergency and there is no evidence that Tronvold's vehicle served a special purpose for his commute to the meeting. Moreover, had he arrived at the fire station as planned, Tronvold's vehicle would have served no special purpose after his arrival."  <u>Id.</u> at 171.

So too here.  Mr. Sully's act of driving back to the RCHCF after his lunch break was indistinguishable from that of an ordinary commuter.  The RCHCF exercised no control over his commute by providing him a vehicle, reimbursing him for mileage driven to the hospital, or directing the means by which he arrived at the hospital for work.  As in <u>Tammen</u>, these factors place this case squarely within the going-and-coming rule.

Further, the benefits to the RCHCF from Mr. Sully's commute to work were identical to the regular benefits an employer receives from an employee

showing up for work.  Merely having Mr. Sully show up for work is not an employer-derived benefit that takes this case out of the going-and-coming rule. And, as in Tammen, Mr. Sully's car would have served no special purpose had he driven safely to the hospital that afternoon—Mr. Sully's use of his vehicle was related only to his commute, and it did not serve any purpose related to his work as a cook.  As the South Dakota Supreme Court concluded in Tammen, "[u]nfortunate as the circumstances are here, the Plaintiff's injuries were 'suffered as a consequence of risks and hazards to which all members of the . . . public are subject rather than risks and hazards having to do with and originating in the work or business of the employer.' " Id. at 171 (quoting Texas Gen. Indem. Co. v. Bottom, 365 S.W.2d 350, 353 (Tex. 1963)).

Similarly, that Mr. Sully was returning to work from a lunch break in the middle of his double shift does not take these facts out of the ambit of the going-and-coming rule.  He was still going to work in his personal vehicle, RCHCF did not in any way control his commute to the hospital, and it did not derive any special benefit from his commute.  That is, despite Mr. Sully's repeated commutes on August 5, 2019, RCHCF did not control or benefit from his travel more than an ordinary employer would, precisely because RCHCF was an ordinary employer.  The fact that Mr. Sully was commuting frequently on August 5, 2019, due to his double shift does not change this conclusion.

The record establishes that Mr. Sully was an ordinary commuter traveling to work at the time of the collision.  His employer did not control his means of arriving at work or reimburse him for his travel.  Nor did his employer

13

derive any benefit beyond having its employee show up for work.  Thus, Mr. Two Eagle has not shown that Mr. Sully's actions were outside the going-and-coming rule and, unless some exception applies, Mr. Sully's actions were not within the scope of his employment.

### b.    Exceptions to the Going-and-Coming Rule

Mr. Two Eagle argues the going-and-coming rule does not apply because the collision occurred on the employer's premises or the sole access route to the work site.  The South Dakota Supreme Court in <u>Tammen</u> cautioned against expanding liability beyond the going-and-coming rule through exceptions to the rule.  "[I]njuries occurring during an employee's commute 'are said not to arise out of and in the course of employment; rather they arise out of the ordinary hazards of the journey, hazards which are faced by all travelers and which are unrelated to the employer's business.' " <u>Tammen</u>, 965 N.W. 2d at 173 (quoting <u>Cardillo v. Liberty Mut. Ins. Co.</u>, 330 U.S. 469, 479 (1947)).  "Accordingly, exceptions to the going and coming rule should 'relate to situations where the hazards of the journey may fairly be regarded as the hazards of the service.' " <u>Id.</u>

### i.    The Premises Exception

Put simply, the premises exception suggests the going-and-coming rule does not apply when the injury occurs on the employer's premises.  Although the parties dispute the applicability of the premises exception in the FTCA context and under South Dakota law, the court need not resolve the dispute.  The record indicates the collision occurred off the RCHCF premises.

14

Mr. Sully's vehicle struck Mr. Two Eagle while he was mowing grass on the Rosebud Water Resources premises, land that was owned and controlled by the Rosebud Sioux Tribe and expressly excluded from the agreement that leased the land on which the RCHCF was built to the IHS.  Docket No. 32-2 at p. 8. The collision did not occur on the premises of the RCHCF, Mr. Sully's employer.  Therefore, even if the premises exception were available, it does not take this case out of the going-and-coming rule because the premises exception is inapplicable here.

### ii.        The Access Doctrine

Mr. Two Eagle asserts an exception to the going-and-coming rule known as the access doctrine applies.  Mr. Two Eagle cites U.S. Fire Ins. Co. v. Deering Mgmt. Grp., Inc., 946 F. Supp. 1271, 1282 (N.D. Tex. 1996), for the proposition that an employee is considered to be within the scope of employment if the injury occurred in an area that the employer has indicated should be used as an access route and that is within a reasonable margin of time and space necessary for passing to and from work.  Because Hospital Drive is the sole access route to the RCHCF, Mr. Two Eagle argues, the location where the collision occurred should be deemed part of the employer's premises, and the going-and-coming rule does not preclude the employer's liability.

But Mr. Two Eagle has not shown the access doctrine is an exception to the going-and-coming rule accepted by South Dakota courts, and even the Court of Appeals of Texas has held it does not apply in the context of vicarious liability for torts.  See OCI Beaumont LLC v. Barajas, 520 S.W.3d 83, 88-89

15

(Tex. App. 2017) (holding "the access doctrine does not apply to extend the rules that determine when employers can be held vicariously liable for the alleged negligence of their employees").  The question of whether Mr. Sully was acting within the scope of his employment is a question of state law; this court will not entertain exceptions to a well-established rule that have not been recognized by South Dakota courts.  That the collision took place next to a road that is the sole access to the RCHCF does not take this case out of the going-and-coming rule.

### iii.    Compensation at the Time of the Collision

Lastly, Mr. Two Eagle asserts the RCHCF paid Mr. Sully during his lunch break and, therefore, he was working when his vehicle struck Mr. Two Eagle. Mr. Two Eagle has not cited any authority for the proposition that an employee is acting within the scope of their employment when they are being compensated for their time regardless of other indicia of control by or benefit to the employer.  Although South Dakota courts have not clarified this issue, it appears other courts have established such an exception.  See Hawkins v. Fowler, Civil Action No. 09-639-JJB-CN, 2010 WL 1851072, at *3 (M.D. La. May 7, 2010) (quoting Brooks v. Guerrero, 831 So. 2d 424, 427-28 (La. Ct. App. 2002) (noting an exception to the going-and-coming rule where the "employer has furnished transportation as an incident to the employment agreement, either through a vehicle or payment of expenses, *or where wages are paid for the time spent traveling*") (emphasis added)).  See also Champagne v. United States, Civil Action Nos. 13-299, 13-348, 2014 WL 222069, at *3

16

(E.D. La. Jan. 21, 2014) (quoting <u>Orgeron v. McDonald</u>, 639 So. 2d 224, 227 (La. 1994) (same)).

Even if South Dakota recognized this exception, Mr. Two Eagle has not shown Mr. Sully was being compensated for the time he spent traveling to the RCHCF that afternoon.  Mr. Sully's supervisor, William Wonnenberg, has provided the court with a sworn declaration pursuant to 28 U.S.C. § 1746.  Wonnenberg avers Mr. Sully had an approximately 45-minute lunch break on August 5, 2019, and lunch breaks are "nonpay" and "nonwork" periods that interrupt a basic workday or a period of overtime work.  Docket No. 20 at p. 2, ¶¶ 9-10.  Wonnenberg also avers the RCHCF does not use an employee clocking system.  <u>Id.</u> at ¶ 12.  Therefore, there is no IHS record that would indicate whether Mr. Sully was, despite his employer's policy, on the clock at the time of the collision.

Mr. Two Eagle points to Mr. Sully's timecard for August 5, 2019, as evidence that he was being compensated at the time of the collision.  According to the timecard, Mr. Sully was compensated for seven hours of regular work and one hour of sick leave on August 5, 2019.  Docket No. 32-9.  According to the record, Mr. Sully started work around 6:00 a.m. on August 5, 2019.  Docket No. 30 at p. 2, ¶ 8.  Wonnenberg avers he directed Mr. Sully to take his lunch break around 12:40 or 12:45 p.m.  Docket No. 20 at p. 2, ¶ 8.  Mr. Sully avers he drove home at around 1:00 p.m. on his lunch break.  Docket No. 22 at ¶ 4.  In an unsworn statement, Mr. Sully states he took his lunch break at 1:00 p.m.  Docket No. 30-3.  The record demonstrates Mr. Sully worked from 6:00

17

a.m. to 1:00 p.m., which accounts for the seven regular hours noted on his timesheet.

So, the only way Mr. Sully could have been compensated at the time of the collision is if the one hour of sick leave was tied to his lunch break. Mr. Two Eagle argues Mr. Sully was only allowed 30-minute lunch breaks, regardless of whether he was working a double shift.  See Docket No. 28 at pp. 1, 11.  This means, Mr. Two Eagle suggests, Mr. Sully's lunch hour ended at 1:30 p.m. and he was compensated for time after that, including when his vehicle collided with Mr. Two Eagle at around 1:40 p.m.

Mr. Two Eagle's argument misses the mark.  Regardless of whether Mr. Sully's lunch break was 30 or 45 minutes on August 5, 2019, his remaining hour of compensation that day was sick leave, not regular pay.  Sick leave, as defined by the OPM, is an "absence from duty."[1]  Even if Mr. Sully were being paid for sick leave at the time of the collision, he was "absen[t] from duty" related to RCHCF.  If Mr. Sully were absent from duty by virtue of being on sick leave at the time of the collision, he was not acting within the scope of his employment—the real issue before the court.  That Mr. Sully might have been on sick leave at the time of the collision, without other indicia he was

---

[1] In deciding a Rule 12(b)(1) motion making a factual attack on jurisdiction, the court may consider material outside the pleadings.  Osborne, 918 F.2d at 729 n.6.  According to the Office of Personnel Management, "[s]ick leave is a paid absence from duty.  An employee is entitled to use sick leave for . . . personal medical needs[.]"  U.S. Office of Personnel Management, Policy, Data, Oversight: Pay & Leave, https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/sick-leave-general-information/ (last visited Jan. 3, 2022).

acting within the scope of his employment, does not take this case out of the going-and-coming rule.  It is Mr. Two Eagle's burden to show jurisdiction exists; therefore, it is Mr. Two Eagle's burden to show that an exception to the going-and-coming rule applies.  He has not carried his burden to show Mr. Sully was acting within the scope of his employment by being paid for time spent traveling back to the RCHCF on August 5, 2019.

Because Mr. Two Eagle has not shown an exception to the going-and-coming rules applies, the court need not reach the issue of foreseeability. Because the going-and-coming rule applies, the government is not liable, as a matter of law, for torts Mr. Sully committed while he was going to work, including any negligence that caused Mr. Two Eagle's injuries on August 5, 2019.  Mr. Two Eagle has not shown Mr. Sully acted within the scope of his employment at the time of the collision, and the government has not waived sovereign immunity under the FTCA.  Accordingly, this magistrate judge recommends granting the government's motion to dismiss count I for lack of subject-matter jurisdiction.

### 2. Negligent Supervision

Mr. Two Eagle's second claim for relief alleges Mr. Sully's employer was negligent in hiring, training, supervising, screening, and retaining Mr. Sully. Specifically, Mr. Two Eagle alleges Mr. Sully's RCHCF supervisors were negligent for failing to prevent Mr. Sully from driving for work purposes within six months of this last seizure.

19

The government moves to dismiss count II for lack of subject-matter jurisdiction, arguing the supervision of employees falls within the discretionary function exception to the FTCA.  Therefore, the government argues, the United States has not waived sovereign immunity, and it cannot be sued.

The FTCA does not waive the immunity of the United States for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The discretionary function exception protects government policy making.  Dykstra v. United States, 140 F.3d 791, 795 (8th Cir. 1998).  "To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction."  Id.  The discretionary function exception shields the United States from liability even if the government employee's actions were negligent.  United States v. Gaubert, 499 U.S. 315, 323 (1991) (citation omitted).

The Eighth Circuit does "not recognize a separate cause of action for the alleged negligent hiring . . . by the government as the plaintiff urges, because of the 'discretionary function' exception to the FTCA."  Red Elk on behalf of Red Elk v. United States, 62 F.3d 1102, 1107 (8th Cir. 1995).  "The hiring and selection of an employee is a discretionary function of the government-employer."  Id. at 1107 n.4; see also Bear v. United States, CIV. 14-5071-JLV, 2017 WL 1082395, at *2 (D.S.D. Mar. 22, 2017).  Therefore, the court

recommends granting the government's Rule 12(b)(1) motion as to Mr. Two Eagle's negligent hiring claim in count II.

A two-part test is used to determine when the discretionary function applies.  "First, the conduct at issue must be discretionary, involving 'an element of judgment or choice.' "  Riley v. United States, 486 F.3d 1030, 1032 (8th Cir. 2007) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).  See also Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc) (quoting Gaubert, 499 U.S. at 328); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 813 (1984).  The court must determine whether there is "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow." Gaubert, 499 U.S. at 322 (quotation omitted).  When no such mandate exists, the governmental action is considered the product of judgment or choice, and the action is discretionary.  Dykstra, 140 F.3d at 795.  "Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995).

Here, Mr. Two Eagle alleges the RCHCF, through Mr. Sully's supervisor, Wonnenberg, was negligent in its failure to take reasonable steps to prevent Mr. Sully from driving to and from work.  Specifically, Mr. Two Eagle alleges Wonnenberg's apparent failure to ask Mr. Sully how long he was disallowed from driving due to his seizure condition, together with Wonnenberg's apparent awareness of his seizures in January, March, and April 2019 (because

21

Mr. Sully was treated at the RCHCF), amounted to negligence.  But Mr. Two Eagle has not directed the court to any federal statute, regulation, or agency directive mandating any specific course of action Wonnenberg or other hospital supervisors should have undertaken regarding Mr. Sully's seizure disorder and his ability to operate a personal vehicle.  Instead, the record indicates Wonnenberg used his judgment in supervising Mr. Sully regarding his ability to drive to and from work.  Mr. Two Eagle's allegations of Wonnenberg's negligent supervision fall short of showing the discretionary function exception does not apply.  Accordingly, the hospital's actions with respect to supervising Mr. Sully's driving a personal vehicle to and from work were a matter of judgment or choice, and the action was discretionary.

Because the challenged action was discretionary, the court moves on to the second step.  The "second requirement is that the judgment at issue be 'of the kind that the discretionary function exception was designed to shield.' " C.R.S. v. United States, 11 F.3d 791, 796 (8th Cir. 1993) (quoting Berkovitz, 486 U.S. at 536).  "Because the exception's purpose is to prevent judicial second-guessing of government decision based on public policy considerations, it protects only those judgments grounded in social, economic, and political policy." Riley, 486 F.3d at 1032 (quoting C.R.S., 11 F.3d at 796).  If a discretionary decision is "susceptible to policy analysis," Gaubert, 499 U.S. at 325, the discretionary function exception applies regardless of whether a defendant actually engaged in "conscious policy-balancing." C.R.S., 11 F.3d at 801.  When the first factor is met, courts presume the government action

22

involved considerations of public policy—i.e., courts presume the second step is also satisfied.  Herden, 726 F.3d at 1048 (citing Gaubert, 499 U.S. at 324).  The plaintiff bears the burden to rebut that presumption.  Id. (citing Demery v. U.S. Dep't of Interior, 357 F.3d 830, 833 (8th Cir. 2004)).

Here, Mr. Two Eagle does not argue that Wonnenberg's discretionary decision was not "susceptible to policy analysis."  The government cites prior cases from this district where courts have held that staffing and operating procedures of an IHS clinic are administrative decisions grounded in economic, social, or political policies that are shielded by the discretionary function exception.  Docket No. 39 at p. 13 (citing Archambault v. United States, 82 F. Supp. 3d 961, 965-66 (D.S.D. 2015) ("The staffing and operating procedures of an IHS health clinic fall under [the category of administrative policies grounded in economic, social, or political policies].  There are finite resources available to [IHS]. . . .  Therefore, it is left to the clinics to best determine how to use the resources effectively.").

As pled, the claims of negligent supervision, training, screening, and retaining fall within the discretionary function exception.  Even if Wonnenberg's actions somehow were negligent, the discretionary function exception operates to preclude the FTCA's waiver of sovereign immunity, and the federal government cannot be sued.  The court lacks subject-matter jurisdiction over count II, and this magistrate judge recommends granting the government's motion to dismiss count II.

### 3. Medical Negligence for Authorizing Sully To Drive

Mr. Two Eagle's third and final count alleges medical negligence against the federal government, through the RCHCF and Dr. Smith, under the FTCA for authorizing Mr. Sully to drive.  The government moves to dismiss this count for lack of subject-matter jurisdiction under Rule 12(b)(1) on the basis that Dr. Smith was an independent contractor of the RCHCF and, therefore, the FTCA does not waive the federal government's sovereign immunity.

### a. Background

The Rosebud Sioux Tribe entered into a "self-determination contract" under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5301 *et seq.*, with the IHS, a federal agency within the DHHS to provide health care to tribal members.  In the terminology of the ISDEAA, the Rosebud Sioux Tribe is an "Indian contractor."  See 25 U.S.C. § 5321(d). Employees of Indian contractors are deemed federal employees for purposes of the FTCA, and personal injury claims arising out of medical malpractice and the performance of ISDEAA contracts are covered by the FTCA.  Id.  See also Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 672 (8th Cir. 2008) (quoting FGS Constructors, Inc. v. Carlow, 64 F.3d 1230, 1234 (8th Cir. 1995) (noting Congress has extended the FTCA's waiver of sovereign immunity to "certain claims arising out of [Indian] self-determination contracts").

At the time of Mr. Sully's treatment, Dr. Smith was working pursuant to a distant site provider credentialing and privileging agreement between the RCHCF and Avera eCARE, LLC ("Avera eCARE"), under which Avera eCARE

24

provided telemedicine services to patients physically located at the RCHCF.
Docket No. 21-1.  The contract between RCHCF and Avera eCARE provides:
"Avera eCARE acting as an independent contractor . . . at all times during the
term of this Agreement shall furnish its services in a manner that enables
[RCHCF] to comply with all applicable Medicare conditions of participation for
Contracted Services."  Docket No. 21-1 at p.1, ¶ 2.  Under the contract, Avera
eCARE was required to provide RCHCF, as to each healthcare provider,
documentation including the provider's state license(s), an
Appointment/Reappointment letter provided by Avera eCARE, and a certificate
of insurance.  Docket No. 21-1 at p. 2, ¶ 4(d).  As to Dr. Smith, Avera eCARE
sent RCHCF a certificate of liability insurance naming as the insured
Moonlighting Solutions, LLC, with the notation "Matthew Smith, MD, is an
independent contractor at Moonlighting Solutions, LLC."  Docket No. 21-6.
Avera McKennan Hospital & University Health Center in Sioux Falls, South
Dakota, was the certificate holder on the policy.  Id.  The contract listed
Dr. Smith as an "Avera eCARE Specialty Clinic Provider."  Docket No. 21-2.
The record indicates RCHCF did not compensate Dr. Smith; Avera eCARE sent
RCHCF invoices for neurology services provided in April and July 2019, when
Dr. Smith treated Mr. Sully.  Docket No. 21-5.

> **b.    The FTCA and the ISDEAA**

The FTCA confers exclusive jurisdiction to the district courts over "civil
actions on claims against the United States, for money damages . . . for injury
or loss of property, or personal injury . . . caused by the negligent or wrongful

act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  An "[e]mployee of the government" is defined to include "officers or employees of any federal agency and persons acting on behalf of a federal agency in an official capacity[.]"  28 U.S.C. § 2671.  As used in the FTCA and § 1346(b), "the term 'Federal agency' includes the executive departments . . . but does not include any contractor with the United States."  Id.  "Courts have construed the independent contractor exception to protect the United States from vicarious liability for the negligent acts of its independent contractors." Edison v. United States, 822 F.3d 510, 518 (9th Cir. 2016) (citation omitted).

The ISDEAA, enacted in 1975, authorizes tribes and tribal organizations to enter into "self-determination contracts" with either the Secretary of Health and Human Services or the Secretary of the Interior.  25 U.S.C. § 5304(i), (j). Under these contracts, the "Indian contractor" agrees to undertake responsibility "for the planning, conduct, and administration of programs or services that are otherwise provided to Indian Tribes and members of Indian Tribes pursuant to Federal law."  25 U.S.C. § 5304(j).  In this case, the Rosebud Sioux Tribe entered into such a contract with the IHS, a division of the DHHS.  In 1987, Congress amended the ISDEAA to provide that personal injury claims against Indian contractors and their employees—in addition to

26

the Federal government and its employees—are covered by the FTCA.  See 25

U.S.C. § 5321(d).  This is because, under section 5321(d),

> [A]n Indian tribe, a tribal organization or Indian contractor carrying out a
> contract . . . under section [] 5321 . . . of this title is deemed to be part of
> the Public Health Services in the [DHHS] while carrying out any such
> contract . . . and its employees . . . are deemed employees of the Service
> while acting within the scope of their employment in carrying out the
> contract . . . .

Id.

### c.   Whether Dr. Smith Was an Employee of RCHCF

Here, Rosebud Sioux Tribe entered into a self-determination contract

with the IHS to provide health services to its members.  It is clear that

employees of RCHCF are covered by the FTCA.  The questions relevant to

subject-matter jurisdiction in this case are, therefore (1) whether Dr. Smith

was employed by the RCHCF and, if not, (2) whether an employee or

independent contractor of an entity that has contracted with RCHCF to provide

health services is covered by the FTCA.  As for the first question, there is no

indication in the record that Dr. Smith was directly employed by RCHCF.  And,

as courts have read § 5321(d), the answer to the second question is "no."

"The crucial element in determining whether an individual may be

considered a federal employee is the amount of control the federal government

has over the physical performance of the individual."  Charlima, Inc. v. United

States, 873 F.2d 1078, 1080-81 (8th Cir. 1989) (referencing United States v.

Orleans, 425 U.S. 807, 814-15 (1976); Logue v. United States, 412 U.S. 521,

528 (1973)).  "Whether an individual is a federal employee or independent

27

contractor under the FTCA is a question of federal law." Lightning Fire, 2017 WL 1944105, at *4 (citation omitted).  "The [Supreme Court has] emphasized that federal funding or policing of federal standards and regulations does not create employee status." Bernie v. United States, 712 F.2d 1271, 1273 (8th Cir. 1983) (quoting Orleans, 425 U.S. at 815).  Instead, courts must "evaluate the extent to which the government has the power to supervise the individual's day-to-day operations." Knudsen v. United States, 254 F.3d 747, 750 (8th Cir. 2001) (citing Orleans, 425 U.S. at 814).

In Bernie, the Eighth Circuit determined that two physicians treating IHS patients were independent contractors and not federal employees because they were employed by separate medical entities, and those entities contracted with the IHS for services and paid the physicians their salaries.  Bernie, 712 F.2d at 1273.  Because "IHS did not exercise control over nor dictate medical judgment" during the provision of health services, the physicians were deemed not to be federal employees.  Id.; see also Knudsen, 254 F.3d at 750-51 (affirming district court decision that mental health counselor was an independent contractor, rather than an employee of Veterans Affairs for FTCA purposes, because the counselor "was not subject to any day-to-day control by the VA and was told not to maintain records for the VA's review," and the fact that Congress "expected the VA to insure that quality work was done with government funds" did not change employee's status); Summa v. United States, No. 90-2140, 1991 WL 114638, at *3 (10th Cir. June 25, 1991) (tribal employee implementing a Summer Youth Employment Training Program funded under

the federal Job Training Partnership Act was not a federal employee under the FTCA because "the federal government did not supervise the day-to-day operations of the tribal program"); Coffey v. United States, 906 F. Supp. 2d 1114, 1165 (D.N.M. 2012) (finding that local detention center was independent contractor, not federal agency, where it provided care for American Indian inmates, but the procurement contract did not "control the detailed physical conduct" of the detention center, and although the detention center was required to comply with federal regulations and requirements, it had the ability to "decide for itself" how to comply with those regulations and requirements).

The Ninth Circuit recently revisited this issue in Sisto v. United States, 8 F.4th 820 (9th Cir. 2021).  There, just as here, the question was whether an employee of an entity that contracted with an Indian contractor to provide health services is covered by the FTCA.  Id. at 826.  The district court answered that question in the negative, and the Ninth Circuit affirmed.  Id.  Important to their analysis was that the agreement between the Indian contractor and the entity explicitly provided that it did not establish an employer/employee relationship between the Indian contractor and any provider.  Id.  The Ninth Circuit concluded the provider was an employee of the independent contractor entity, not an employee of the Indian contractor, and the FTCA did not authorize a suit against the United States based on his alleged negligence.  Id.

Similarly, in Flute v. United States, No. 4:18-CV-04112-RAL, 2019 WL 3325353 (D.S.D. July 24, 2019), the court found a medical provider employed by an independent contractor was not a federal employee covered by the FTCA.

29

Id. at *6.  There, the independent contractor entered into a medical services agreement with the IHS.  Id. at *1.  The court found relevant that the IHS did not control the provider's day-to-day performance, or the professional aspects of the medical services rendered, including examination, diagnosis, treatment planning, follow-up, and consultation of patients.  Id. at *6 (citing 48 C.F.R. § 52.237-7.  The court also considered that the IHS did not have the power to hire or fire the provider, and the hospital's bylaws treated physician-contractors differently than physician-employees.  Id.

The same conclusion obtains under the facts in this case.  Dr. Smith was an independent contractor because he was not subject to any day-to-day control by the RCHCF.  The RCHCF did not provide daily supervision, nor did it control Dr. Smith's right to exercise independent medical judgment, including examination, diagnosis, treatment planning, follow-up, and consultation of patients.  See Docket No. 21 at pp. 4-5, ¶¶ 21-23.  The telemedicine agreement states Avera eCARE was an independent contractor of RCHCF.  Docket No. 21-1 at p. 1, ¶ 2.  And there is no indication in the record that Dr. Smith, separate from Avera eCARE, had an employee/employer relationship with RCHCF.  Instead, Dr. Smith was either an employee or independent contractor of Avera eCARE.[2]

---

[2] In Mr. Two Eagle's parallel South Dakota state-court case, the pleadings suggest Dr. Smith was an employee or contractor of Moonlighting Solutions, LLC, which staffed Dr. Smith to Avera eCARE for purposes of providing telemedicine services under its contract with RCHCF.  Docket No. 19-2 at p. 3, ¶ 7; Docket No. 19-3 at p. 2, ¶ 7.  However, the court need not ascertain the nature of Dr. Smith's relationship with Avera eCARE; the only relationship that

RCHCF, under its telemedicine agreement with Avera eCARE, did not have the authority to hire or fire Dr. Smith.  See Docket No. 21-1 at pp. 2-4, ¶¶ 3-5 (Avera eCARE bore responsibility to provide RCHCF with accurate lists of providers and their privileges, and RCHCF bore responsibility to confirm the list in writing; RCHCF did not add or remove providers from the list). Dr. Smith was not paid by RCHCF.  Instead, Avera eCARE invoiced RCHCF for neurology telemedicine services provided under the agreement.  And, as in Flute, the RCHCF bylaws treated physician-employees differently than physician-contractors.  Docket No. 21-4 at pp. 3-4, Art. 4.2 (delineating differences between providers with "Active" privileges and providers, including contractors, with "Courtesy" privileges).  For instance, the bylaws indicate that torts committed by providers with Active privileges were covered by the RCHCF, and providers with Active privileges could vote in RCHCF meetings and elections.  Id. at p. 3, Art. 4.2.1.1.

On the other hand, tort coverage for providers with Courtesy privileges was dependent on the contract between the parties, and such providers could not vote in meetings.  Id. at p. 4, Art. 4.2.3.1.  In its telemedicine agreement with Avera eCARE, RCHCF disclaimed liability for torts committed by Avera employees and contractors.  Docket No. 21-1 at p. 7, ¶ 20 ("[E]ach party acknowledges that it will be responsible for claims or damages arising from personal injury or damage to persons or property to the extent they result from

_____

matters for purposes of subject-matter jurisdiction over Mr. Two Eagle's count III is between Dr. Smith and RCHCF.

negligence of *that party's* employees.") (emphasis added).  And Avera eCARE agreed "not to seek indemnification from either the United States or [RCHCF] for any settlement, verdict or judgment resulting from any claim or lawsuit against it or its Providers arising out of the performance of contracted services." Id.  These differences suggest Dr. Smith was an independent contractor, not an employee, of RCHCF.

The record demonstrates Dr. Smith was acting as an independent contractor when he treated Mr. Sully and lifted the driving restriction. Therefore, Dr. Smith was not an employee of the United States or an Indian contractor.  The FTCA, as expanded through § 5321(d), does not authorize suit against the United States based on his alleged negligence.[3]

---

[3] The court notes Mr. Two Eagle's claim III is dubious even if Dr. Smith were a federal employee under the FTCA.  Claim III essentially asserts a third-party beneficiary claim to a medical negligence claim:  it alleges Dr. Smith was negligent in his provision of medical services to Mr. Sully and that Mr. Two Eagle was injured thereby.  It does not appear the cause of action alleged in count III is recognized by South Dakota courts.  The federal government has only waived sovereign immunity to the extent a private person would be liable under South Dakota law.  28 U.S.C. § 1346(b)(1).  Mr. Two Eagle bears the burden to establish jurisdiction.  Mr. Two Eagle cites no South Dakota statutes or case law—nor has the court found any—to support a cause of action by a third-party beneficiary for medical negligence perpetrated upon someone other than the plaintiff/third-party.  See Barnes v. United States, 448 F.3d 1065, 1067 (8th Cir. 2006) ("[T]he relevant question is whether the government's conduct was such that a private individual under like circumstances would be liable under state law.").  Because there has been no showing that a private medical provider would be liable to a third-party beneficiary for a claim of medical negligence under these facts, the United States has not waived sovereign immunity and the court lacks subject-matter jurisdiction over count III, even if Dr. Smith were a federal employee.

### d.    Mr. Two Eagle's Arguments

Mr. Two Eagle offers several arguments against this conclusion.  The court addresses them in turn.

### i.    The Solid-Waste Contract and Funding Agreement

The Rosebud Sioux Tribe entered into a self-determination contract for the removal of solid waste with the Secretary of the DHHS related to the RCHCF.  Docket No. 32-10.  Appended to the contract was an Annual Funding Agreement for fiscal year 2019, which contained a section related to the FTCA:

> A health care practitioner who has been granted clinical privileges in a health facility operated by the [Rosebud Sioux Tribe] shall be considered an employee of the Federal Government for purposes of the [FTCA] for any acts or omissions that occur in the course of providing services to eligible Indian beneficiaries as well as those persons deemed to be eligible for IHS services pursuant to [Indian Health Care Improvement Act ("IHCIA")] sections 813(a) and (b), 25 U.S.C. § 1680c(a) and (b), even if the practitioner is not an employee of the IHS or an employee or personal services contractor of the Contractor.  Whether FTCA applies in any particular case is initially decided on an individual case-by-case basis by the United States Department of Justice and ultimately decided on a case-by-case basis by the Federal Courts.

Docket No. 32-10 at pp. 20-21.

Mr. Two Eagle asserts this contract language indicates health care providers who are granted clinical privileges, including independent contractors granted limited privileges, are to be considered employees of the Federal government for FTCA purposes.  Docket No. 28 at p. 16.

The government argues "[t]he funding agreement references a provision under the [IHCIA] extending FTCA coverage to individuals who are designated as employees for purposes of the FTCA as part of the privileging process and

are issued privileges on the condition that the practitioner provide services to IHS beneficiaries covered by the FTCA." Docket No. 39 at p. 17. The government then cites 25 U.S.C. § 1680c(e)(1), which states in relevant part "non-[IHS] health care practitioners may, as part of the privileging process, be designated as employees of the Federal Government for purposes of [the FTCA] only with respect to acts or omissions which occur in the course of providing services to eligible individuals as part of the conditions under which such hospital privileges are extended." 25 U.S.C. § 1680c(e)(1). In Sisto, the Ninth Circuit found that § 1680c(e)(1) does not mean independent contractors should be considered Federal employees under the FTCA simply because they are issued hospital privileges; the hospital privileges must be issued *on the condition that the provider render services covered by the FTCA* in order for 25 U.S.C. § 1680c(e)(1) to confer FTCA coverage. Sisto, 8 F.4th at 829.

But Mr. Two Eagle is not arguing § 1680c(e)(1) extends FTCA coverage to Dr. Smith on the sole basis that RCHCF granted him certain clinical privileges. Instead, Mr. Two Eagle's argument is based on the plain language of the funding agreement. The funding agreement from the solid-waste contract, Mr. Two Eagle argues, is itself strong support that Dr. Smith should be considered a Federal employee for FTCA purposes.

However, labels in a contract are not dispositive of whether an individual is an employee or independent contractor. Under relevant federal law, "[t]he crucial element in determining whether an individual may be considered a federal employee is the amount of control the federal government has over the

34

physical performance of the individual." <u>Charlima</u>, 873 F.2d at 1080-81 (citing <u>Orleans</u>, 425 U.S. at 814-15).  Therefore, the court looks to indicia of RCHCF's control over Dr. Smith, not merely what the solid-waste contract's funding agreement says about the FTCA's applicability to providers granted clinical privileges.

The court has already determined the RCHCF did not exercise enough control over Dr. Smith for him to be considered its employee.  Therefore, the language in RCHCF's funding agreement with the DHHS, without anything else in the record to suggest an employment relationship, does not require the court to treat Dr. Smith as an employee of RCHCF for FTCA purposes.

### ii. Supervision by the RCHCF Governing Board

Lastly, Mr. Two Eagle argues that, under the terms of the agreement between RCHCF and Avera eCARE, together with RCHCF's bylaws, Dr. Smith was subject to supervision by RCHCF to such an extent that he should be considered its employee.  Mr. Two Eagle references (but has not provided the court) article seven of the RCHCF bylaws, which he represents includes a section on telemedicine with recommendations for the scope of services to be provided and IHS internal review of providers' performance.  Docket No. 28 at p. 18.  Mr. Two Eagle also points to article five, which vests in the governing board final authority in managing full "membership and/or clinical privileges." Docket No. 21-4 at p. 5, Art. 5.1.7.  The telemedicine agreement between RCHCF and Avera eCARE, for its part, provides that "Providers shall, when

providing Contracted Services, abide by any applicable [RCHCF] policies and procedures."  Docket No. 21-1 at p. 5, ¶ 12.

But Mr. Two Eagle points to nothing that shows RCHCF had actual control over Dr. Smith's practice of medicine.  See Sisto, 8 F.4th at 830 (citing Carrillo v. United States, 5 F.3d 1302, 1305 (9th Cir. 1993)).  As the Eighth Circuit noted in Bernie, "[t]he [Supreme Court has] emphasized that federal funding or policing of federal standards and regulations does not create employee status.  The question to be answered is whether day-to-day operations are supervised by the Federal Government."  712 F.2d at 1273 (quotation and internal citations omitted).  It does not matter that RCHCF retained authority to police its standards and grant privileges; what is relevant to the employment inquiry is whether RCHCF controlled Dr. Smith's day-to-day activity.  As explained herein, RCHCF did not control Dr. Smith's day-to-day activity to such an extent that he should be considered its employee.  Therefore, the FTCA does not cover any negligence on the part of Dr. Smith related to his treatment of Mr. Sully.  The United States is immune from suit, and this magistrate judge recommends granting the government's motion to dismiss count III for lack of subject-matter jurisdiction.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the defendant's motion to dismiss [Docket No. 17] for lack of subject-matter jurisdiction and dismissing Mr. Two Eagle's complaint.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 5th day of January, 2022.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge